5-11. That's 0-4-5-0. You may proceed. Pleases the court, counsel, I'm Dennis Atterbury. I'm the attorney for the petitioner, Roger Estes had a stroke during an intense argument at work, and this should be a related case. The first issue that needs to be addressed is we believe the Commission erred when it ruled that there was no 45-day notice. Section 6c of the Act says yes, there is a 45-day notice required. However, a defective notice is not a bond unless the employer shows prejudice. Outlining what is notice, Yellow Freight Systems v. Industrial Commission indicated that notice is equal to employer possession of known facts within 45 days. The employer doesn't dispute that they knew that there was a stroke that occurred while arguing with the boss. What their point is is that they did not know that it was work-related. The Supreme Court held that they did not need to know that it is work-related. They did not need to be told that it is work-related, and that was in Andronico v. Industrial Commission. In that case, a garbage man goes home sick, dies of a heart attack. The spouse calls the employer and says he died of a heart attack. The Supreme Court says that phone call is sufficient. The employer knew that there was a heart attack and knew the type of work that the petitioner had. Six years later, the Supreme Court again ruled in McLean Trucking Company v. Industrial Commission, as well as Raymond v. Industrial Commission, that all that is required is to show that the facts were known equally by both parties. That rule makes sense. The employer cannot be held to the standard of a doctor. Work may be only a cause, not the sole or approximate cause, and a stroke is a multi-factual type injury. It's not a all potential factors could have been a contributory cause of the stroke. That's why it makes sense that as long as the parties both know all the facts, that there is notice. In this case, the defendant's case occurred at work during a heated argument. Each witness testified that the work was stressful, since it occurred during and directly after the heated argument. Both doctors testified that stress can cause, can be a causal factor in the stroke. Well, again, you've got the battle of the medical experts. McClintock, who I believe was treating your client's claimant, provided a causal connection opinion. Then you had Dr. Schuman, while acknowledging, of course, it's probably common sense, stress could be a factor in causing this type of a condition or a stroke. He clearly opined that the claimant was a candidate for a stroke regardless of whether he'd been at work, at home, just sitting around. It was due to other conditions, correct? Yes, but the courts have held that just because you are susceptible to a heart attack or a stroke or something like that, that doesn't mean that your claim should be denied. If the facts end up resulting that the work was a causal factor, then it's still... But Schuman said it wasn't. Schuman said he didn't believe that the January 26, 2007 management meeting had any impact on the claimant's stroke. Right, and the reason he did so in his IME report and in his testimony was that, and he said, he ruled stress out because of the following. The timing of the symptoms, the poor control of diabetes, and the hypertension. Okay, the timing of the symptoms. Yes, the symptoms occurred 24 hours in advance. But this was history given by somebody having a stroke. So in order to prevent this from being an argument, even though it's turned into an argument, we brought three independent eyewitnesses to the event. We have Dave Hawkins, Jeremy Brandt, and Bob Estes. Jeremy Brandt is a manager. He's in a manager's meeting. He notices Roger Estes at the beginning of the meeting. He's fine. Nothing's going on. The meeting went immediately tense. Partially through the intense meeting, he looked over at the petitioner. The petitioner started looking sweaty and started having, not looking well. Brandt said, hey, you need to get out of here. The general manager said, no, you're staying here. We got a meeting to do and we're not letting him leave. This meeting went on for quite some time, according to Brandt. He then goes back to his office, sits down. That's when Dave Hawkins comes in. Dave Hawkins testifies that this is when the blankness of the computer screen and the inability to write occurred. He then contacts Bob Estes, who actually works at the dealership as well. She gets him. They leave. It's at this time that he's unable to control the left extremity. What does this have to do with Schumann's opinion? Schumann based his opinion on the fact that the stroke occurred. It's the timing. He says, and this is the key. Dr. Schumann testified that if stress was a causative factor of the stroke, the stroke would occur generally during or shortly after the onset of the stress. He says because of the symptoms of the blankness of the computer screen, the inability to write and the difficulty in controlling the left extremity occurred 24 hours prior to the stroke, that the timing. So what this boils down to, to be candid about it, is you were challenging the underlying premise of Schumann's opinion and you believe his opinion is flawed, do you not? Correct. Based on a misinterpretation of some of these events. And clearly, he's going to get up and say the commission relied on Schumann anyway. So where does that leave you? Well, in the arbitrator's decision, the arbitrator excluded Dr. McClintock's testimony. He should have under Greer. He wasn't disclosed. He's a treating physician. And a treating physician can talk about causation. Alright, even if that was error, not conceding that, but even if it was error to have excluded that testimony in the decision, the arbitrator considered the substance of McClintock's testimony. Yeah, well, you have Dr. McClintock, who's treated this guy for a long period of time. He was intimately familiar with the petitioner. Dr. Schumann never met the petitioner. Dr. Schumann says he's obese. You have three witnesses, or actually four witnesses, including their witness, who all said he wasn't obese. He looked in great shape. His arms looked like they were baseballs. Dr. Schumann's records, his opinion is based upon faulty time. Let me ask you a very blunt question. Sure. Are you representing and did you represent below that your client was in good health? This is a case, I could see your point, if he's in a meeting, he's in relatively good health, and then suddenly his condition develops. I thought there was a documented history of hypertension and diabetes. Not hypertension, your honor. Is that referred to in the record? Did he say it was caused, didn't Schumann say it was caused by multiple risk factors, including poorly controlled diabetes and hypertension? Where do you get that from? The hypertension was only found, there was no medical record about hypertension until after, until the emergency room record, when he went in. Well, then they found hypertension. Correct. Now, but both doctors acknowledge glucose level of 305 is not enough to cause a stroke. Blood pressure of 162 over 90 is not enough alone to cause a stroke. Both acknowledge the stress can. Both doctors says that a spike in the glucose or in the blood pressure is what caused this rapture of this plaque to rapture off and cause a stroke. So what caused the blood pressure to then spike up? I don't understand your argument, and it's a very logical argument, it was that the stress of this meeting in combination with other factors caused the stroke, right? Yes. It has to be your argument. Yes. Okay. We understand it. You don't even need Dr. McClintock if you can establish there was that stressful meeting. It's your position, right? I mean, the claimant has conditions that presumably plaque, and you have Schumann saying that, you know, stress can cause plaque to leave the walls of the blood vessels. Right. I agree. I totally agree. Now, Schumann did say somewhere in the, in his rebuttal argument, okay, maybe I got the timing wrong off, but he was sitting in an air conditioned or time controlled room, which there's no facts as to what was, was there an air conditioned room, and there's no way this stroke could have occurred. They're going to say this is also not the type of stroke that can cause, that could have been caused in that manner. Yet, in his testimony, he did say it's the spike that caused the rapture, that caused the plaque to break off, and that caused the stroke. I think he kind of conditioned himself there in the rebuttal, but in the end, I believe you're right. I think that it is a cause. Is it the sole? Is it the primary? I think it's a cause. You don't need anything but that, do you? Correct. Did you make that argument before they ever turned the commission? Yes, but with regards to Dr. McClintock's testimony, I don't know how much, we got the decision back within two weeks from the arbitrator getting proposed decisions. The commission didn't catch the fact that the arbitrator got it right, in my opinion, in the transcript, where he overruled the objection about McClintock being able to testify. Yet, in the proposed decision, it says he can't. It says that it's ruled against because of gear. The commission also just affirmed that. Either they didn't read the proposed decision, or they didn't read the transcript. I don't think that they paid enough attention to this case. I don't believe so. Now, if I could go to notice right quick. There's a 45-day notice requirement. The stroke happened right there. There's some notice. And then, the commission also erred, I think, in saying that even if this is, because the doesn't rise to the level of the cop case, because it doesn't deal with safety. And that's not the issue. That opinion overrules three Supreme Court cases. County of Cook versus the Industrial Commission, that's a tax collector case. The guy was inundated at the last minute with tax bills. He had a heart attack. He was overweight. He had a history of diabetes. Yet, that was still compensable. The Worth case. It's a businessman. Under high pressure with a failing business, poor economics, deadlines, he had a heart attack. It's rose out of employment. Bagot case was the teacher in billing trades. Dealt with deadline pressures, fewer students. But the city of Waukegan, that is the cop case. This guy, and not to belittle this job at all, but he's a desk jock. He sits inside the station. And his job, one part of his job, is to take care of the firing range. And the firing range was not operational that day, so he was on his way to a meeting, knowing he was going to get his butt chewed. Had a heart attack because of the stress. On his way to get a butt chewing. He didn't get to the meeting. My client at least made it to the meeting and was in the middle of the butt chewing when this whole thing occurred. So every time an employer chews out an employee, we've got potential case under the act. No, it has to be greater stress than the general public. In this case, we had a general manager who had no experience of being a general manager. He changed how to do business. My client was making $9,000 a month. And when this guy came in and changed how he was doing it, it went down to $4,000 per month. And now, during this meeting, he comes in and says, It's your fault, Mr. Petitioner, because you need to go back to school. He's like, No, you're doing it all wrong. You made my income go down. How about the manager that calls his employees dirty names? Each witness says that this was a very stressful job. Calling us by dirty names, that may be a hostile work environment, but I don't think that's a stressful job. This guy came in and fired a lot of people. Everybody says that this is a very high impact. Their witnesses, my witnesses, everybody says this is a high stress job. And it's not one where do you want fries with that type of job. It's one where there is a high stress. And everybody admits that. And there was a difference between the Bagot decision and the ESCO court. The ESCO court tried to say, The Petitioner is required to now show that it is not ordinary stresses. It is universal to all employment. The Bagot court rejected that analysis and said, No, we're not going to add another element. We're not going to go there. And I don't believe the Bagot case came. I think the Bagot case should be the controlling case. Thank you. Thank you, Counselor. Counselor, you may respond. Please record. My name is Mark Cozumini, and I represent the employer, Grant Automotive. There are basically three issues with the case, accident, notice, and causation. The most important aspect here, I think, is the standard of review. We've talked many, many times about the manifest way standard and how in this particular case, especially when we deal with the causal connection issue, it is a battle of the doctors. This is in the province of the commission. They get to pick. They get to pick which doctor to believe. Well, that makes sense. What about his argument, though, that this was a convergence or confluence of events? You have these conditions, which he passively acknowledges, but you have then obviously a meeting that all eyewitnesses say was very stressful, during which, or at the conclusion of which, the claimant became obviously ill. What's your response to that? I think we go back to the medical opinions. Dr. Shuman, who's the vascular doctor who testified here, said there's three different kinds of strokes that could happen. He had a sort of a thrombotic stroke, and if it was the kind of situation where the blood pressure spikes to such a level which it causes a stroke, it would be a hemorrhagic stroke, the artery would burst. That's not what happened to Mr. Estes. He had a thrombotic stroke, which is different. He explained it is similar to when someone has a stroke first thing in the morning because their arteries are spinotic, that there's not enough pressure to get enough blood through to the brain. Well, there's no incident. There's no high blood pressure spike when that happens. It's a completely different scenario, and given all of his risk factors, you know, the uncontrolled diabetes, the high blood pressure, the high cholesterol, that was the type of stroke that he had, not the hemorrhagic spike from blood pressure, not that kind of a stroke. So when you talk about the chronology of events, I really don't think it matters. So he had the type of stroke of plaque releasing from the blood vessel? I believe so. He calls it a thrombotic stroke, which would just be a clot, yeah. That's correct. So in any event, you're going to rely on Shuman and say that it's within the province of the commission to credit him more than the other doctor? Of course. If I can add to that, it's not just Dr. Shuman. Dr. Moran wrote a letter to Dr. Narla explaining how the diagnostic studies show that there's scattered atherosclerosis throughout the cerebral arteries. Yeah, but didn't you have Dr. Shuman state that intense physical and emotional stress could activate the synthetic nervous system causing increased heart rate and forced contraction of the blood vessels, presumably, to the point of cracking or fissuring a plaque? Well, all that is certain. But such events could also happen spontaneously. So he's not – I guess what I'm saying is Shuman actually could be a clothing council's witness. If he can establish the stress, et cetera. Except that he said the most likely scenario is that this was the risk factors and not any sort of a stressful occurrence. His bottom line opinion was that this meeting or any increased stress could not be true. Okay. The arbitrator of the commission, the commission finder of fact, says Shuman supports petitioner's theory. Would you be of your arguing that they made an error because Shuman said the most likely? We probably would have settled the case if that would have happened, if our doctor said it was related. What I guess I'm going at is that an expert is just simply evidence. It doesn't decide the case. Well, I guess I'll have to disagree slightly with that in that it is just evidence, but the commission picked that evidence, and the commission gets to do that. Okay. So Dr. McClintock's opinion is evidence, and the commission decided not to believe that. Well, we have problems with Dr. McClintock. Let's just take him away from the case. We have one doctor. And I think everybody has to realize Dr. Shuman says stress can do this. It can, but he said it didn't. So, you know, I don't know how we go from it didn't to, well, it might have, and in some scenarios that could. I don't think that possibility converts his opinion to support the claim. But you agree that if you take McClintock out, the commission would side with the petitioner's theory with the idea of stress, this meeting. Well, that doesn't get around the type of stroke that he had. Yes, it does. Shuman just said that stress can cause the release of high blood pressure, the mechanism releasing plaque. You just told me it was a plaque-related stroke. It is a plaque-related stroke. And you got Shuman saying that stress can, through that mechanism, release plaque. Well, because it's possible, I don't, I mean, we have doctors testify all the time that something is possible, but that doesn't change their opinion. That doesn't create an opinion out of them. And so. What about the notice? He's saying, hey, look, obviously the company knew we had a stroke. We were seeing the beginning of it, and there's no prejudice. So what's your response to that? If there is defective notice. That's when prejudice comes in. There is no prejudice. If there is defective notice, I lose on that issue. But here you're saying there was no notice? The Lowell White case is what we're relying on. There's no notice of an industrial accident. Everyone knew he had a stroke. That was counted on. The box that was checked indicated the contrary, didn't it, that it wasn't working? I'm sorry, which box? The box that you checked for the form, didn't it say that it was not? That's correct. There's a disability claim form that was filled out subsequently, and that was checked off that it was not related. Now, there's some question. Mrs. Estes testified about that, saying that it was actually the office manager that checked the box, and she signed on behalf of Prosman. But the form is what it is, and it says it's not related. Mr. Estes testified that he never even considered that this was a work-related situation until almost two years afterwards. So to say that he provided notice, I don't know how the employer could know that it was related if he didn't know it was related. He's been treating with Dr. McClintock all this time. They never talked about it. So to say that if everybody knew the same thing, well, everybody knew nothing. So I don't think we're going anywhere there. My brief, I included an argument about accident as well. This is sort of a no greater risk argument. If you have any questions about that, I'm happy to address them. Otherwise, I think causal connection is the main issue, and we're asking that you affirm the Commission's denial of benefits. Thank you, Counsel. Counsel may reply. One thing that needs to be, I think that may have been overlooked, is that the plaque buildup was not at 80 percent, 90 percent. It was at 50 percent. It was not to the point to where it was a ticking time bomb ready to just go off. It was 50 percent. Dr. McClintock says that that's treated with aspirin. With regards to the White case, the White case is repetitive trauma. Nobody knew when the accident was. That's distinguishable here, and that says to notice. This case has a specific incident date. As far as the checkbox, my client didn't do that. His wife did that on his part. My client never even seen that form until we were getting ready for arbitration. It is a cause, not the sole cause, not the primary cause. Stressful meeting. Dr. Schumann, he changed his opinion midstream. He talks about how the stress can cause the plaque to rupture off, and then he changes it and says that this is not the type of stroke that's going to go there. He did that on cross and rebuttal and not on his direct examination. I think this is a doctor who, while yes, the commission did take his opinion into consideration and excluded Dr. McClintock's, I think if you go and see how he changed his opinion and see the facts in the chain of connection, I think this is a compensable case, and that's what we're asking. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement.